Natanael Burgos TORRES, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–02–00591–CR.

Court of Appeals of Texas, Houston (1st Dist.).

March 13, 2003.

Discretionary Review Refused June 11, 2003.

---

Henry L. Burkholder III, Houston, for Appellant.

Kelly Ann Smith, Assistant District Attorney, Charles A. Rosenthal, Jr., District Attorney–Harris County, Houston, for State.

Panel consists of Justices TAFT, KEYES and HIGLEY.

## OPINION

TIM TAFT, Justice.

Appellant, Natanael Burgos Torres, challenges the denial of his motion for post-conviction forensic DNA (deoxyribonucleic acid) testing. *See* TEX.CODE CRIM. PROC. ANN. Art. 64.01 *et seq.* (Vernon Supp. 2003). In two points of error, we determine (1) whether the trial court erred in denying appellant's motion because he established by a preponderance of the evidence that exculpatory DNA test results would have established his innocence and (2) whether the DNA statute allows appellant to obtain DNA testing by showing a reasonable probability that he would have received a different punishment assessment had he had the DNA test results. We affirm.

### Facts and Procedural History

On September 7, 1994, a jury found appellant guilty of aggravated robbery and assessed his punishment at 60 years' confinement. This Court affirmed on direct appeal.[1] In May 2002, appellant filed a motion in the trial court for forensic DNA testing of biological evidence. After the State filed its written response to the motion, the trial court considered the arguments of both parties and denied the motion.

---

1. *Torres v. State*, No. 01–94–00877–CR, 1998 WL 135110 (Tex.App.-Houston [1st Dist.] Mar. 19, 1998, pet. ref'd).

At trial, there had been testimony that appellant and two other men entered the complainant's house and held the complainant and her son captive at gunpoint while they robbed her. During the commission of the robbery, appellant struck the complainant in the head with his hands and with a handgun, causing blood to come out of her mouth. Appellant was arrested at the scene of the robbery while he was loading the complainant's property into a car. After taking appellant into custody, the arresting officer found a handgun in the waistband of appellant's pants. Appellant requested that this handgun be tested for the presence of the complainant's DNA.

### Innocence

In his first point of error, appellant contends that the trial court erred in denying his motion for post-conviction DNA testing because he established by a preponderance of evidence that exculpatory DNA test results would have proven his innocence. *See* TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A) (Vernon Supp.2003). Appellant claims that the absence of the complainant's blood on the firearm, which he alleges would be established by DNA testing, would suffice to show that he was not the person who robbed the complainant.

In reviewing the trial court's decision, we afford almost total deference to the trial court's determination of historical-fact issues and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). However, the ultimate question of whether a reasonable probability exists that exculpatory DNA tests would have proven innocence is an application-of-law-to-fact question that does not turn on cred-

ibility and demeanor and is, therefore, reviewed de novo. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App.2002). To obtain post-conviction DNA testing, an applicant must establish by a preponderance of the evidence that "a reasonable probability exists that [he] would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing." *See* TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). Thus, an applicant must show that "a reasonable probability exists that exculpatory DNA tests will prove [his] innocence." *Kutzner v. State*, 75 S.W.3d 427, 438 (Tex.Crim.App.2002). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Ex Parte Guzmon*, 730 S.W.2d 724, 733 (Tex.Crim.App.1987).

There is not a reasonable probability that the absence of the complainant's blood on the firearm found in appellant's possession would have established appellant's innocence because there was other substantial competent evidence that the jury could have used to convict the appellant. *See Rivera*, 89 S.W.3d at 60 (holding that reasonable probability will not be found when there exists sufficient amount of evidence, other than evidence in question, that was used or could have been used by trial court in finding of guilt). In *Rivera*, the Court of Criminal Appeals found that the absence of a victim's DNA from under the fingernails of the defendant would not have supported the probability of his innocence in light of the defendant's oral confession that was corroborated by independent evidence. *Id.* (stating, "Even if one concluded that negative test results supplied a very weak exculpatory inference, such an inference would not come close to outweighing [defendant's] confession.").

Similarly, in *Kutzner*, the defendant moved for forensic DNA testing of hair strands and fingernail scrapings to prove

his innocence. *See id.*, 75 S.W.3d at 439. Finding that the testing would not have established the defendant's innocence by a reasonable probability, the Court of Criminal Appeals relied on the circumstantial evidence used to convict the defendant at trial. *Id.* (stating, "At most, exculpatory DNA tests on this evidence would 'merely muddy the waters.' "). Likewise, this Court and other courts of appeals have held that DNA testing under the DNA statute is to be granted only when the convicted party establishes his innocence by a reasonable probability.[2]

Here, as in *Kutzner, Rivera,* and *Thompson,* an abundance of other evidence exists in the record from which a jury could have found appellant guilty of aggravated robbery.[3] The officer responding to the incident identified appellant as the person he caught in the act of loading what was later determined to be the complainant's stereo into the trunk of a white car. After arresting appellant, the officer found the handgun in question in the waistband of appellant's pants. At trial, the complainant testified that three men, including appellant, entered her house with guns. The complainant witnessed appellant taking her stereo sets, speakers, jewelry, purses, sneakers, and "all kinds of stuff." In addition, the complainant identified appellant as the same man who hit her in the head with his hands and with the gun in question, dragged her into her bedroom by her hair, and threatened to hurt her if she did not comply with his demands.[4]

In light of the existence of other competent evidence establishing appellant's guilt, we hold that appellant did not establish by a preponderance of evidence that exculpatory DNA test results would have proven his innocence.

We overrule appellant's first point of error.

## Punishment

In his second point of error, appellant contends that the trial court erred in denying his motion for post-conviction DNA testing because he established by a preponderance of the evidence that exculpatory DNA test results would have affected the punishment assessed against him. Appellant argues that, because of Texas' bifurcated system of criminal justice, a

---

2. *See Thompson v. State,* slip op. at 7–8, 95 S.W.3d 469, 472 (Tex.App.-Houston [1st Dist.] 2002, pet. filed) (designated for publication) (using *Rivera* and *Kutzner* as guide, holding that defendant, previously found guilty of aggravated assault, did not establish that DNA testing would produce exculpatory results when weapon used and to be tested was box cutter, when other competent evidence was available to show that defendant committed offense); *see also Nix v. State,* No. 12–02–00067–CR, slip op. at 3, 2002 WL 31721099 (Tex.App.-Tyler, Dec.4, 2002, no pet. h.) (not designated for publication).

3. The jury was instructed that a person commits the offense of robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or

death. Tex. Pen.Code Ann. § 29.02(a)(2) (Vernon Supp.2003). Aggravated robbery occurs when, in the course of committing robbery, a person (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon. Tex. Pen.Code ann. § 29.03 (Vernon 1989).

4. We also note that ample evidence exists in the record that the jury could have used to find the appellant guilty under the law of parties. *See* Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon Supp.2003). The jury was also instructed that appellant could be found guilty under the law of parties, which states that a person is criminally responsible for an offense committed by another if he acts with the intent to promote or assist the commission of the offense and he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.*

defendant is not "convicted" under article 64.03 until a decision is reached on both guilt *and* punishment. *See* TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). Because the statute uses the disjunctive "prosecuted *or* convicted," appellant claims that he has met the requirements of the DNA statute because he has shown that exculpatory DNA test results would more likely than not have resulted in a different punishment assessment. *Id.* (emphasis added). Appellant urges the court to interpret "convicted" broadly to encompass the dual nature of conviction and punishment assessment that is inherent in a bifurcated system. We must, therefore, determine whether the DNA statute allows a defendant to obtain post-conviction DNA testing merely by showing the probability that he or she would have received a different punishment.

We are aided by the decision of the Court of Criminal Appeals in *Kutzner* in which, in another context, the Court considered two possible meanings of the phrase "a reasonable probability exists that [the defendant] would have been prosecuted or convicted if exculpatory results had been obtained through DNA testing." *See id.,* 75 S.W.3d at 437. In *Kutzner,* the Court was called upon to decide the meaning of the above phrase to determine the defendant's burden of proof before obtaining DNA testing. *See id.* The Court stated that (1) the statute could mean that a convicted person must show by a reasonable probability that favorable DNA results would prove his innocence or (2) the statute could mean only that favorable DNA results would have resulted in a different outcome, unrelated to the person's guilt or innocence, such as a modification in the assessment of punishment. *Id.* After looking at the plain meaning and legislative history of the statute, the Court chose the former meaning. *Id.* at 438–39. Therefore, the *Kutzner* Court has already

found the language "would not have been prosecuted or convicted" to be synonymous with "innocent." *Id.* at 439.

 Although our case presents a slightly different issue, we can find no reason to deviate from the *Kutzner* Court's interpretation of the same phrase. Accordingly, we hold that a defendant may not seek forensic DNA testing for the purpose of affecting the punishment assessed. Therefore, the trial court did not err in denying appellant's motion requesting DNA testing for this reason.

We overrule appellant's second point of error.

### Conclusion

We affirm the order of the trial court that denied post-conviction forensic DNA testing.