Thomas H. BARANOWSKI, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00153–CR.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 5, 2005.

Decided Nov. 2, 2005.

Mary Ann Rea, Longview, for appellant.

Ray Bowman, Asst. Dist. Atty., Longview, for state.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Thomas H. Baranowski pled guilty in 1984 to allegations of sexual assault. In August 2003, he filed his motion for DNA testing pro se. *See* TEX.CODE CRIM. PROC. ANN. art. 64.01 (Vernon Supp.2005). He now appeals the trial court's order denying his motion. He raises three points of error, challenging the trial court's findings. We affirm.

## I. Factual and Procedural History

Baranowski pled guilty in May 1984 to sexual assault.[1] A Gregg County jury assessed an enhanced punishment of life in prison and a $10,000.00 fine. Nearly twenty years later, on August 6, 2003, Baranowski filed his motion for forensic DNA testing pro se, stating "that proper testing of DNA evidence in possession of the [S]tate during the prosecution of this case will establish the true identity of the person committing the offense...." He also stated that "[n]ew DNA evidence has been

---

1. This Court affirmed Baranowski's conviction. *See Baranowski v. State,* No. 06–84–00094–CR (Tex.App.-Texarkana Mar. 5, 1985, no pet.) (not designated for publication). Baranowski also filed several applications for writs of habeas corpus. Identity was not challenged on appeal or in any other proceed-ing. On appeal, Baranowski alleged improper jury argument and excessive punishment. His several and lengthy applications for writs of habeas corpus filed pro se seem to deal largely with mandatory supervision and parole matters.

discovered in a lab" and that he "believes that the materiality of this evidence is such as would probably bring about a different result on rehearing." Baranowski sought, but was initially refused, appointed counsel. The State responded that Baranowski had failed to sufficiently plead the requirements of Article 64.01. Specifically, the State argued Baranowski had failed to plead that there was evidence secured at the time of trial that could be tested and that the "new" evidence was not covered by the statute.

The trial court did later appoint counsel to represent Baranowski during this proceeding. In counsel's search for the biological evidence taken at the time of trial, he discovered from the court's file that the Tyler Crime Laboratory received several items of clothing and linens, along with the victim's sexual evidence kit. The laboratory reported that no sperm sample was detected on the vaginal swab included in the sexual evidence kit or on any of the cloth items. Type O blood, consistent with the victim's blood, was found on a gown and a blanket. Blood was also found on a watch and under the fingernail clipping taken from the victim. However, the laboratory reported, the sample on the watch did not respond to testing for blood type, and the sample under the victim's fingernail was not in a quantity sufficient to determine blood type. Counsel then took steps to locate the biological samples for further, more modern testing.

The Tyler Crime Laboratory, by letter, explained that it did not maintain custody of any evidence associated with this case and that the evidence was returned to the Longview Police Department (LPD) in 1984. Good Shepherd Medical Center stated it needed additional information about the victim in order to identify and locate any records. The LPD informed defense counsel that the only item retained by the LPD was the necklace belonging to the victim. The other evidence was released to the district attorney's office June 4, 1984.

So, the last known location of the evidence appears to be the district attorney's vault. Some time elapsed during which Baranowski's counsel was in contact with the district attorney's office. Apparently not having received a satisfactory response from the district attorney's office, Baranowski's attorney moved the trial court to compel disclosure of the biological evidence at issue and to order the State to provide necessary identifying information about the victim to enable Baranowski to obtain access to hospital records.

The trial court held a hearing February 20, 2004, on Baranowski's motion to compel disclosure, after which it ordered the State to deliver any biological evidence in its possession, as well as personal identification numbers of the complaining witness. On March 1, 2004, the State filed its "Tender," documenting the State's efforts to locate any biological evidence from this case. Ultimately, the State concluded the LPD forwarded any evidence gathered, except for a necklace, to the district attorney's office. The State attached an affidavit from an investigator who searched the district attorney's vault for evidence from this case and found none.

The State had disclosed the victim's date of birth in its March 1 "Tender," but did not disclose her social security number (SSN). Baranowski maintained he could not obtain hospital records without the SSN and, so, moved the trial court to order Good Shepherd Medical Center to send a representative to appear before the court and disclose its file on the complaining witness. The trial court set the hearing on this motion for April 30, 2004. Before the hearing, the hospital delivered its

file to the district attorney's office, who turned it over to the trial court.

At the April 30 hearing, the trial court and the parties attempted to clarify the development of the process up to that point. Although the hearing seemed somewhat unnecessary at this point, the hospital's custodian of records testified that records previously delivered by the hospital represented all the records retained in relation to this case. The custodian of records for the LPD testified she had disclosed all the written material available to her at the police department. Sergeant Jamie Johnson of the LPD testified that physical evidence was kept in a separate location from the written records and added that he understood that no physical evidence relating to the trial was located at the LPD.

At the end of this confused hearing, Baranowski's counsel realized that, as municipal judge, he had signed the search and arrest warrant in this matter back in January 1984. He therefore moved and was granted leave to withdraw from representation. The trial court delayed its ruling until new counsel had been appointed for Baranowski.

After appointment of new counsel, the trial court held another hearing October 14, 2004, during which the State offered its second response, reiterating its efforts to locate the physical evidence and, again, concluding that it could not do so. Baranowski's new appointed attorney indicated she had no objection to the State's response and the attorneys had agreed that the State would make this second "Tender." The trial court then denied Baranowski's motion. In its order, the trial court made three findings, all of which Baranowski challenges: 1) Baranowski failed to prove he was seeking DNA testing evidence that was secured in relation to the offense and that was in the possession of the State during the trial; 2) there was no evidence that any physical evidence amenable to DNA testing exists at the present time; and 3) there was a failure of proof with respect to Baranowski's burden to meet the requirements of Tex.Code Crim. Proc. Ann. art. 64.03(a)(2) (Vernon Supp.2005).

## II. Applicable Law

### A. Standard of Review

■ We employ a bifurcated standard of review in this post-conviction DNA appeal. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex.Crim.App.2002). We afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review de novo other application-of-law-to-fact issues. *Id.; Eubanks v. State,* 113 S.W.3d 562, 565 (Tex.App.-Dallas 2003, no pet.). Therefore, the trial court's finding regarding the existence or location of the evidence is afforded almost total deference. *See Rivera,* 89 S.W.3d at 59; *Bright v. State,* No. 07–04–0586–CR, 2005 WL 2090657, *1–2, 2005 Tex.App. LEXIS 7157, at *2–3 (Tex. App.-Amarillo Aug.30, 2005, no pet. h.).

### B. Procedure under Article 64

Article 64.01 imposes certain pleading requirements on a defendant seeking to compel DNA testing:

(a) A convicted person may submit to the convicting court a motion for forensic DNA testing of evidence containing biological material. The motion must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion.

(b) The motion may request forensic DNA testing only of evidence described by Subsection (a) that was secured in relation to the offense that is the basis of the challenged conviction and was in

the possession of the state during the trial of the offense, but:

(1) was not previously subjected to DNA testing:

(A) because DNA testing was:

(i) not available; or

(ii) available, but not technologically capable of providing probative results; or

(B) through no fault of the convicted person, for reasons that are of a nature such that the interests of justice require DNA testing; or

(2) although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous test.

TEX.CODE CRIM. PROC. ANN. art. 64.01.

On receipt of a post-conviction motion requesting DNA testing, the trial court must order the state to deliver the evidence or explain in writing why it cannot do so. TEX.CODE CRIM. PROC. ANN. art. 64.02(2) (Vernon Supp.2005). The trial court may reach its decision on whether evidence exists to be tested "based on the sufficiency of the state's written explanation." [2] *Cravin*, 95 S.W.3d at 509.

If the trial court makes certain findings, it may order DNA testing:

(a) A convicting court may order forensic DNA testing under this chapter only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and

(B) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX.CODE CRIM. PROC. ANN. art. 64.03(a).

### III. Analysis

#### A. Did the Trial Court Err by Finding Baranowski Failed To Prove He Sought Testing of Evidence Secured in Relation to the Offense, Which Was in the State's Possession at the Time of Trial?

Assuming Baranowski was successful in arguing that he did meet Article 64.01's pleading requirements, then the appropriate remedy would be to order the State to produce the evidence or explain, which, of course, the trial court already did. *See* TEX.CODE CRIM. PROC. ANN. art. 64.02 (Vernon Supp.2005). So, the issue concerning whether Baranowski's motion properly pled the evidence at issue in accordance with Article 64.01(b) is rendered moot by the fact that the trial court did, in fact, order the State to produce the evidence. For this reason, we overrule this first point of error as moot.[3]

---

2. Although not required to do so, the State presented supporting affidavits to its response. *See Cravin v. State*, 95 S.W.3d 506, 509 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

3. The trial court's finding of which Baranowski complains is one clearly concerning Article 64.01. Appeals concerning motions filed before September 1, 2003, are subject to the following limitation: "an appeal of a finding

**B.  Did the Trial Court Err By Concluding There Is No Physical Evidence Amenable to DNA Testing Currently in Existence?**

### 1.  The Record Supports the Trial Court's Finding

█ First, reading this point of error literally and affording nearly total deference to this type of finding by the trial court, we conclude the trial court properly concluded that the biological evidence available at the time of trial no longer existed.[4]  The State's "Tender" supports the conclusion that the evidence ultimately ended up at the district attorney's office.  There, Investigator Mike Augustine searched the vault for any biological evidence in connection with Baranowski's trial and found none.  Beyond that, the district attorney's office can provide no details as to whether or how the evidence was removed, destroyed, or lost.  After reviewing the evidence submitted, we find that the record supports the trial court's determination that no evidence containing biological material capable of DNA testing presently exists.  The trial court was aware of the great deal of time that had elapsed between Baranowski's conviction and his motion for DNA testing—nearly twenty years.  Considering this extensive lapse of time, the State's response that it simply did not know what happened to the evidence is not surprising.  Nor is the response inadequate as it might have been had the State's response involved a more recent conviction.  Deferring to the trial court's finding, we hold that the trial court properly denied Baranowski's motion for post-conviction DNA testing.  *See*

---

under Article 64.03 or 64.04 is to a court of appeals...." Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 2, 2001 Tex. Gen. Laws 2, 4 (amended 2003); *Wolfe v. State,* 120 S.W.3d 368, 372 (Tex.Crim.App.2003) (holding appellant had no right to appeal trial court's denial of request to appoint independent expert since issue was not within Articles 64.03 or 64.04); *see also Hurd v. State,* No. 05–03–01000–CR, 2004 WL 113099, *1–2, 2004 Tex. App. LEXIS 704, at *4 (Tex.App.-Dallas Jan.26, 2004, no pet.) (mem.op.) (not designated for publication) (holding court lacked jurisdiction to consider complaint regarding trial court's procedure under Article 64.02).

Baranowski filed his motion August 6, 2003, meaning his motion is subject to the prior law limiting the rulings that can be reviewed.  So, under *Wolfe,* we lack jurisdiction over this issue. Even though the parties do not raise this point, we are obligated to determine sua sponte whether we have jurisdiction.  *State v. Roberts,* 940 S.W.2d 655, 657 (Tex.Crim.App.1996), *overruled on other grounds, State v. Medrano,* 67 S.W.3d 892, 903 (Tex.Crim.App.2002); *Watson v. State,* 96 S.W.3d 497, 500 (Tex.App.-Amarillo 2002, pet. ref'd).

This seemingly clear application of the prior Article 64.05 is undermined, however, by the Texas Court of Criminal Appeals in *Shan-*

*non v. State,* 116 S.W.3d 52, 54 (Tex.Crim. App.2003), *cert. denied,* —— U.S. ——, 125 S.Ct. 75, 160 L.Ed.2d 44 (2004).  In *Shannon,* although the motion for DNA testing was filed in "late 2001," the court directly addressed Shannon's argument that Article 64.02, specifically, directed the trial court to make an inquiry into whether the state had properly accounted for all the evidence.  *Id.* With no reference to the limitation on jurisdiction to review this issue, the court held that Shannon had forfeited his right to complain by failing to request such relief from the trial court and overruled Shannon's point of error.  *See id.* at 54–55.  This disposition appears to conflict with *Wolfe* and the language of the pre–2003 statute.  In light of *Shannon,* the extent of our jurisdiction to review this and related issues involved in motions filed before September 1, 2003, is unclear.  With that in mind, we conclude we probably lack jurisdiction over this Article 64.01 issue, but, nevertheless, conclude that the issue was rendered moot at any rate.

**4.**  We reiterate our concerns regarding jurisdiction to consider this Article 64.01 issue.  However, we feel compelled to follow *Shannon* to the extent that it is relevant and note that *Shannon* involves a very similar substantive issue as the one before us.

*Lopez v. State,* 114 S.W.3d 711, 717 (Tex. App.-Corpus Christi 2003, no pet.).

## 2. Any Complaint Concerning Adequacy of State's Search Was Waived

 At oral argument, it became clear that Baranowski's argument also challenged the trial court's acceptance of the results of the State's search and the adequacy of the State's explanation why it could not deliver the evidence. That is, Baranowski argues the trial court should have made the State look again or look more thoroughly.

The Texas Court of Criminal Appeals makes clear that the issue of asking for more investigation on the state's part is an issue that can be waived by a failure to request such relief from the trial court. *See Shannon,* 116 S.W.3d at 54–55. Such is the very situation we have before us. The record shows no request for a further search was made to the trial court. In fact, Baranowski's second appointed attorney affirmatively stated she had "no objection to the tender today" and indicated that the parties had come to some sort of agreement as to the State's second response or "tender." Since Baranowski failed to request from the trial court an order directing the State to do more, he has not preserved for our review the trial court's failure to provide such relief. *See* TEX.R.APP. P. 33.1; *Shannon,* 116 S.W.3d at 54–55.

We overrule this point of error and, based on such disposition, conclude that we need not address the remaining point of error [5] and affirm the trial court's ruling.

---

**5.** Baranowski's final point of error challenges the trial court's findings relating to Article 64.03. Article 64.03 authorizes the trial court to order DNA testing only when the applicant establishes by a preponderance of the evidence that, among other things, "the person would not have been convicted if exculpatory results had been obtained through DNA testing." TEX.CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A). A trial court must order testing only if the statutory preconditions are met. *Bell v. State,* 90 S.W.3d 301, 306 (Tex. Crim.App.2002). Because we have concluded the trial court did not err by concluding no testable evidence currently exists, then Baranowski clearly failed to satisfy those preconditions. *See Shannon,* 116 S.W.3d at 54 n. 6. (noting the several points of issues that were rendered moot by the court's disposition of two primary issues).