

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00207-CR
_____


ANTONIO DEMOND SCOTT, Appellant

V.

THE STATE OF TEXAS, Appellee



On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 04F574-102



Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Antonio Demond Scott stands convicted of aggravated robbery[1] and is currently serving a life sentence. After Scott's motion for DNA testing was denied by the trial court, he filed a motion for new trial simply asking the court to reconsider its ruling. That motion, too, was denied by the trial court.

Scott urges three issues on appeal.

First, Scott claims the trial court erred in ruling on the DNA-testing motion in violation of Article 64.02. *See* TEX. CODE CRIM. PROC. ANN. art. 64.02 (Vernon Supp. 2009).[2]

---

[1]The jury found that Scott was one of three intruders who entered the residence of Randall Brian, without his consent, in an attempt to steal the seventy-five pounds of marihuana Brian had stored in his closet. Brian testified that three intruders, wearing ski masks, broke down the door between his carport and his kitchen and immediately began shooting their firearms at him. The police determined a total of five shots were fired by someone other than Brian. Brian testified he did not give anyone permission to enter his house and did not know Scott. Brian returned fire, hitting one intruder. On direct examination, Brian testified he fired once and struck one intruder, who yelled and continued firing. On cross-examination, Brian testified the person he shot "fell back against my bar" leaving blood and handprints. Although Scott told the police he had been shot at a barbeque, Scott testified at trial that he was not one of the intruders, but was present to make a purchase of marihuana. The State introduced evidence at trial that Scott was not excluded as the source of two of the five bloodstains at the scene of the crime. DNA analysis was attempted on three of the five bloodstains submitted to the laboratory, but one of the three samples tested did not yield a DNA profile. Scott appealed, and this Court affirmed. *Scott v. State*, No. 06-06-00097-CR, 2007 Tex. App. LEXIS 2688 (Tex. App.—Texarkana Apr. 6, 2007, pet. ref'd) (mem. op., not designated for publication).

[2]Scott complains that the trial court erred in failing to comply with the mandatory requirements of Article 64.02. The issue is whether Article 64.02 requires a trial court to wait sixty days before making any ruling on the motion or whether the article merely prohibits ordering DNA testing before the waiting period expires. When interpreting a statute, "we seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). The Legislature's intent is normally determined by examining the statute's plain language under the assumption that the Legislature said what it meant and, thus, the words are the most certain guide to the Legislature's intent. *Id*. Appellate courts "will not apply the plain language, however, if (1) the 'application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended,' or (2) the language is ambiguous." *State v. Colyandro*, 233 S.W.3d 870, 877 (Tex. Crim. App. 2007) (quoting *Boykin*, 818 S.W.2d at 785).

The plain language of the statute indicates the response period applies only when a trial court orders DNA testing. The use of the phrase "proceed under Article 64.03" is critical to the issue of whether the waiting period

Second, Scott claims the trial court erred in limiting the purpose for which counsel was appointed.[3]

Third, Scott claims the trial court applied the wrong standard in reviewing the motion for DNA testing.[4]

---

applies to all motions for DNA testing or to only motions on which DNA testing is ordered. Article 64.03 provides the circumstances under which the trial court may order DNA testing. TEX. CODE CRIM. PROC. ANN. art. 64.03 (Vernon Supp. 2009). There is no reference to a denial of the motion in Article 64.03. Thus, the statute merely prohibits the trial court from taking any action under Article 64.03, i.e., ordering the DNA evidence to be tested. In this case, the trial court did not take any action under Article 64.03. The trial court denied the motion, indicating it would not proceed under Article 64.03. Thus, we conclude the plain language of Article 64.02(b) does not apply to the denial of a motion for DNA testing. Even if this issue had been preserved for our review, the trial court did not err in denying the motion before the expiration of the sixty-day response period.

[3]Scott complains that the trial court erred in limiting the scope of the appointment of the Bowie County Public Defender's Office. But Scott was not entitled to appointment of counsel. Article 64.01(c) requires the appointment of counsel only when reasonable grounds exist for a motion to be filed. TEX. CODE CRIM. PROC. ANN. art. 64.01(c) (Vernon Supp. 2009); *see Gutierrez v. State*, 307 S.W.3d 318, 321 (Tex. Crim. App. 2010). As originally enacted, the appointment of counsel for a motion for DNA testing was mandatory if the convicted person requested counsel and was indigent. *See Winters v. Presiding Judge of the Crim. Dist. Court Number Three of Tarrant County*, 118 S.W.3d 773, 775 (Tex. Crim. App. 2003) ( orig. proceeding). Because the Texas Legislature amended Article 64.01 in 2003 to condition the appointment of counsel on a finding that reasonable grounds for the motion existed, the appointment of counsel under Article 64.01(c) is no longer a ministerial act. *In re Ludwig*, 162 S.W.3d 454 (Tex. App.—Waco 2005, orig. proceeding).

The Statute does not specify how a trial court should determine reasonable grounds exist. In two unpublished, or memorandum, opinions, the Austin Court of Appeals has concluded "reasonable grounds for a testing motion are present when the facts stated in the request for counsel or otherwise known to the trial court reasonably suggest that a plausible argument for testing can be made." *In re Franklin*, No. 03-07-00563-CR, 2008 Tex. App. LEXIS 4545 (Tex. App.—Austin June 19, 2008, no pet.) (mem. op., not designated for publication); *see In re Crayton*, No. 03-09-00099-CR, 2009 Tex. App. LEXIS 8319 (Tex. App.—Austin Oct. 27, 2009, pet. dism'd) (mem. op., not designated for publication). While memorandum opinions are not binding precedent, they can be relied on as persuasive authority. We agree with the holdings of the Austin Court of Appeals and hold that reasonable grounds for a testing motion are present when the facts stated in the request for counsel or otherwise known to the trial court reasonably suggest that a plausible argument for testing can be made.

Scott claimed that DNA testing of the bloodstain from the kitchen counter would be exculpatory because it would establish Scott did not shoot the victim. The facts alleged, though, are still insufficient to establish reasonable grounds. The mere presence of an additional perpetrator is not exculpatory evidence. *See Wilson v. State*, 185 S.W.3d 481, 486 (Tex. Crim. App. 2006). Even if DNA testing might establish a convicted person was not the principal actor, there is no right to testing if the convicted person would still be a party to the offense. *See Torres v. State*, 104 S.W.3d 638, 641 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

The error-preservation requirements of Rule 33.1 of the Texas Rules of Appellate Procedure apply to motions for DNA testing. *Shannon v. State*, 116 S.W.3d 52, 55 (Tex. Crim. App. 2003); *Baranowski v. State*, 176 S.W.3d 671, 677 (Tex. App.—Texarkana 2005, pet. ref'd); *see* TEX. R. APP. P. 33.1. None of Scott's complaints on appeal were presented to the trial court. In his motion for new trial, Scott requests merely that the trial court reconsider its ruling on the merits. Scott does not complain in his motion for new trial that the trial court erred in ruling before the expiration of the sixty-day response period, in appointing counsel for a limited purpose, or in applying the wrong standard. None of Scott's issues on appeal are preserved for appellate review.

---

[4] Scott claims the trial court erred in applying the wrong standard in deciding whether to grant Scott's motion. Even when the trial court specifies the wrong reason for its decision, the appellate court should sustain the decision if the trial court's decision is correct on any theory of law applicable to the case. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002); *Leonard v. State*, 135 S.W.3d 98, 100 (Tex. App.—Texarkana 2004, pet. ref'd).

The State argues Scott failed to show the failure to test the evidence was through no fault of his own because he failed to request testing of the evidence at trial. Before an appellate court can consider whether a convicted person has established by a preponderance of the evidence that he or she would not have been convicted if exculpatory results had been obtained through DNA testing, the court must first consider the threshold issue of whether the items available for forensic DNA testing would qualify for testing. *See Routier v. State*, 273 S.W.3d 241, 245 (Tex. Crim. App. 2008). Scott has not argued that DNA testing was not available at the time of his trial, that DNA testing was available, but not technologically capable of providing probative results, or that the technology now available would provide a reasonable likelihood of more accurate and probative results. Thus, Scott was required to demonstrate the evidence "was not previously subjected to DNA testing . . . through no fault of the convicted person . . . ." TEX. CODE CRIM. PROC. ANN. art. 64.01 (Vernon Supp. 2009).

Scott's conclusory statement that the evidence had not been tested through no fault of his own is insufficient. Insufficient also is the fact that the evidence was in the possession of the State. Article 64.01(b)(1)(B) contemplates an obligation to seek DNA testing under technologies available at the time of trial. *Routier*, 273 S.W.3d at 247. In rejecting the fact that the evidence had been in possession of the State satisfied the absence of fault requirement, the Court stated "we will require the appellant to make a more particularized showing of the absence of fault whenever [he or she] invokes Article 64.01(b)(1)(B)." *Id.* A convicted person who claims to have not been at fault for the failure to previously test evidence must actually demonstrate such absence of fault. *See id.* Scott's motion does not explain why the evidence at issue was not previously tested. Nothing in the record indicates Scott attempted to have the evidence tested at the time of trial. Scott has failed to demonstrate a particularized absence of fault. There was no error in denying Scott's motion for forensic DNA testing.

We, therefore, affirm the ruling of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     July 19, 2010
Date Decided:       August 10, 2010

Do Not Publish