John Byron YARBROUGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–07–00024–CR.

Court of Appeals of Texas, Waco.

March 12, 2008.

Joseph L. Sheppard, Burleson, Richard Alley, Fort Worth, for appellant.

Dale S. Hanna, Johnson County Dist. Atty., Cleburne, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

John Byron Yarbrough appeals from the denial of his motion for postconviction DNA testing under Chapter 64 of the Code of Criminal Procedure. Yarbrough contends in two issues that the court erred by: (1) denying his motion for DNA testing; and (2) denying his motion to issue a bench warrant so he could participate in the hearing on his request for DNA testing. We will affirm.

### Background

Yarbrough and co-defendant Milton Brumfield were convicted of capital murder for fatally shooting Jerry Lee Shaw in a roadside restroom during the course of a robbery. Two eyewitnesses stated that they heard gunshots fired within 20–30 seconds after Shaw entered the restroom. An African American male and a Caucasian [1] male immediately ran from the restroom. One of the eyewitnesses identified Brumfield as the African American.[2] They both stated that Brumfield and his companion left the scene in a red car which appeared to be a Ford Escort or Mercury Lynx and had the numerals 8 and 9 included in the license plate number. Yarbrough owned a red Mercury Lynx with license plate number 898 MMR. Brumfield gave a series of written statements admitting that he participated in the crime. Brumfield stated that Yarbrough and he had entered the restroom that night for the purpose of robbing someone. He said that Yarbrough is the one who shot Shaw.[3]

---

1. One of the eyewitnesses stated that the "white male" "looked like he might have been Hispanic."

2. The other witness identified the person in photo "number 5" in a photographic line-up as the Caucasian, but it is not clear from the limited record before us whether Yarbrough was the person identified.

3. Brumfield pleaded guilty and testified against Yarbrough.

A jury convicted Yarbrough of capital murder in 1990 and made the necessary findings for a death sentence. The Court of Criminal Appeals reversed the conviction and ordered a new trial because of significant inaccuracies in the statement of facts which could not be corrected. *See Yarbrough v. State*, No. 71,226, slip op. at 2 (Tex.Crim.App. Mar. 17, 1993) (per curiam) (not designated for publication); TEX. R. APP. P. 50(e), 707–708 S.W.2d (Tex. Cases) lxii-lxiii (Tex.Crim.App.1986, amended 1997) (current version at TEX. R. APP. P. 34.6(f)). On remand, Yarbrough pleaded guilty after the State agreed to waive the death penalty, and the court sentenced him to life imprisonment.

Yarbrough later filed a motion for appointment of counsel to obtain postconviction DNA testing under Chapter 64. The court appointed Yarbrough's trial counsel to represent him in these proceedings. Counsel filed a motion for DNA testing without identifying any particular evidence to be tested. Counsel and Yarbrough himself both filed motions for a bench warrant so Yarbrough could appear at the hearing on the motion for DNA testing.

The State filed a motion asking the court to deny Yarbrough's request for DNA testing. In this responsive motion, the State identified the evidence in its possession which could conceivably be tested and argued that the request should be denied because (1) identity was not an issue at trial and (2) exculpatory results would not establish by a preponderance of the evidence that Yarbrough would not have been convicted if those results had been available at trial. The State supported its motion with the affidavit of one of the investigators who participated in Yarbrough's case. The investigator's affidavit, in turn, was supported by eyewitness statements, several statements given by Yarbrough's co-defendant Brumfield,

the victim Shaw's autopsy, and other documentary evidence.

Following a hearing on Yarbrough's motions for a bench warrant, the court denied those motions.

The court later conducted a hearing on the merits of Yarbrough's motion for DNA testing. Yarbrough argued among other things that the court should order the State to: (1) obtain a specimen of Brumfield's DNA and compare it with evidence in the State's possession such as Shaw's clothing; and (2) exhume Shaw's body to check for fingernail scrapings containing DNA and compare any results with Brumfield's DNA and Yarbrough's DNA. He further argued that eyewitness identification was inconclusive and that additional testing would serve to either confirm or refute Brumfield's statements and testimony about how the offense occurred. The State responded that: (1) Chapter 64 does not contemplate or require the collection of additional evidence not already in the State's possession at the time of trial; and (2) any exculpatory findings would only muddy the waters and would not establish by a preponderance of the evidence that Yarbrough would not have been convicted.

The court denied Yarbrough's motion for DNA testing. The court adopted the State's proposed findings of fact and its sole proposed conclusion of law. This conclusion of law states, "The Court concludes that the Applicant has failed his burden of proof and has not met the requirements of Art. 64.03 § (a)(2)(A) V.A.C.C.P. and that his motion for DNA testing should be denied."

## Applicable Law

Article 64.01(b) provides for the postconviction DNA testing of evidence containing biological material if that evidence "was secured in relation to the offense that is the basis of the challenged conviction and

was in the possession of the state during the trial of the offense." TEX. CODE CRIM. PROC. ANN. art. 64.01(b) (Vernon 2006). Under article 64.03(a), a court may order testing only if:

(1) the evidence still exists in a condition making DNA testing possible and has been subjected to a sufficient chain of custody;

(2) identity was or is an issue in the case; and

(3) the defendant has established by a preponderance of the evidence that:

(A) he would not have been convicted if exculpatory results had been obtained from DNA testing; and

(B) the request for testing is not made to unreasonably delay execution of sentence or the administration of justice.

*Id.* § 64.03(a) (Vernon 2006).

We apply a bifurcated standard of review. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex.Crim.App.2002); *accord Whitaker v. State,* 160 S.W.3d 5, 8 (Tex.Crim.App. 2004). "[W]e afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues." *Id.*

## Bench Warrant

■ Yarbrough contends in his second issue that the court erred by denying his motion to issue a bench warrant so he could participate in the hearing on his request for DNA testing. Our sister courts have uniformly held that, because a Chapter 64 proceeding is collateral proceeding, a defendant has no right to be present at a hearing on his application for postconviction DNA testing. *Rose v. State,* 198 S.W.3d 271, 272 (Tex.App.-San Antonio 2006, pet. ref'd); *Booker v. State,* 155 S.W.3d 259, 266 (Tex.App.-Dallas 2004, no pet.); *Thompson v. State,* 123 S.W.3d 781, 784 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd); *Cravin v. State,* 95 S.W.3d 506, 510–11 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). Because Yarbrough had no right to be present at the hearing, the court did not err by denying his motion for a bench warrant. Accordingly, we overrule Yarbrough's second issue.

## Identity

As part of his first issue, Yarbrough contends that the issue of identity was and is at issue notwithstanding his guilty plea. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B). The State disputes this contention. Nevertheless, the court did not make any findings or conclusions regarding identity. Therefore, we assume without deciding that the court did not deny Yarbrough's motion for DNA testing on this basis.

## Evidence Subject to Testing

Yarbrough's first issue also expressly challenges the court's refusal to order that Shaw's body be exhumed to check for fingernail scrapings containing DNA and implicitly challenges the court's refusal to order the State to obtain a specimen of Brumfield's DNA.[4]

According to article 64.01(b), only evidence which "was secured in relation to the offense that is the basis of the challenged conviction and was in the possession of the state during the trial of the

---

4. It is undisputed that the remainder of the evidence referred to in Yarbrough's brief remains in the State's possession in a condition making DNA testing possible and has been subjected to a sufficient chain of custody. *See* TEX. CODE CRIM. PROC. ANN. 64.03(a)(1)(A) (Vernon 2006).

offense" is subject to court-ordered testing. Tex. Code Crim. Proc. Ann. art. 64.01(b).

■■■ The statute on its face does not require the State to collect additional evidence which a defendant deems potentially exculpatory. Rather, the scope of testing under Chapter 64 is expressly limited to evidence collected in relation to the charged offense and in the State's possession at the time of trial. *Id.* Therefore, we hold as a matter of law that the State cannot be compelled to exhume a victim's body to gather additional evidence for DNA testing under Chapter 64. *See Wolfe v. State,* 120 S.W.3d 368, 372 (Tex.Crim. App.2003) ("Chapter 64 authorizes the convicting court to order DNA *testing,* and no more."). Likewise, the State cannot be compelled to draw a blood specimen from a person who is or may be criminally responsible for the offense, nor can the State be required to produce a blood specimen in the possession of a state agency such as TDCJ which was not drawn "in relation to the offense that is the basis of the challenged conviction" and in the State's possession at the time of trial.[5]

Accordingly, we hold that the court did not err by refusing to order the State to exhume Shaw's body to check for fingernail scrapings containing DNA or to obtain a specimen of Brumfield's DNA.

### Exculpatory Results

■■ Yarbrough concludes his first issue by arguing that he established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained from the requested testing. The State responds that exculpatory results would serve only to muddy the waters and, because Yarbrough was prosecuted under the law of parties, he did not make the requisite showing on this issue.

Yarbrough contends that the trial evidence shows that a struggle ensued between Shaw and his attackers before he was fatally wounded. He argues that DNA testing of clothing seized from him near the time of the offense would reveal the absence of any blood spatter from Shaw, that testing of Shaw's clothing may reveal the presence of Brumfield's DNA, and that testing of a marihuana baggie found in Shaw's pocket may likewise reveal the presence of Brumfield's DNA.[6] To summarize, Yarbrough argues that such test results would establish that Brumfield rather than Yarbrough struggled with Shaw and shot him.

The State responds that such results would serve only to muddy the waters. The State notes that prior testing was negative for the presence of blood on Yarbrough's clothing. The State argues that, even if further testing confirms the absence of blood on the clothing, such a result would not necessarily exonerate Yarbrough because he could have been standing far enough away from Shaw that there would be no blood spatter on his clothing. The State makes the same argument with respect to the absence of Yarbrough's DNA on Shaw's clothing or the marihuana baggie.

---

**5.** Yarbrough's co-defendant Brumfield is currently serving his prison sentence for this offense. At the hearing, Yarbrough argued that a specimen of Brumfield's DNA should be obtained either from a blood specimen allegedly taken from Brumfield when he was initially imprisoned at TDCJ or by court order requiring that a new blood specimen be drawn. Yarbrough does not refer to these contentions in his appellant's brief but does argue that certain evidence in the State's possession should be tested for Brumfield's DNA.

**6.** Yarbrough likewise wanted to establish the presence of Brumfield's DNA in the fingernail scrapings he sought to obtain from Shaw's body.

Under the law of parties, the State argues that the presence of Brumfield's DNA on Shaw's clothing or the marihuana baggie would not necessarily exonerate Yarbrough. The State observes that such testing may (or may not) lead to the conclusion that Brumfield rather than Yarbrough was the shooter but it would not establish that Yarbrough did not participate in the offense in some manner. *See Rodriguez v. State*, No. 13-03-00150-CR, 2004 WL 1834401, at *4 (Tex.App.-Corpus Christi Aug. 12, 2004, no pet.) (not designated for publication); *Harper v. State*, No. 06-03-00136-CR, 2003 WL 22977077, at *3 (Tex.App.-Texarkana Dec. 19, 2003, no pet.) (not designated for publication); *see also Torres v. State*, 104 S.W.3d 638, 641 n. 4 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (referring in the alternative to "ample evidence" of appellant's guilt under the law of parties when affirming an order denying postconviction DNA testing).

Exculpatory results would serve only to muddy the waters regarding Yarbrough's guilt. *See Kutzner v. State*, 75 S.W.3d 427, 439 (Tex.Crim.App.2002); *Carter v. State*, 134 S.W.3d 484, 486 (Tex.App.-Waco 2004, no pet.). This is particularly true in view of the fact that the record contains sufficient other evidence tending to connect Yarbrough to the commission of the offense as a party. Thus, we conclude that Yarbrough failed to prove beyond a reasonable doubt that he would not have been convicted if exculpatory results were obtained. We overrule Yarbrough's first issue.

We affirm the order denying Yarbrough's motion for postconviction DNA testing.