**Louanne LARSON, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 06–15–00178–CR**

Court of Appeals of Texas,
Texarkana.

Submitted: February 25, 2016

Decided: April 1, 2016

Rehearing Overruled April 26, 2016

Louanne Larson, Gatesville, TX, pro se.

Angela Rene Smoak, Marion County & District Attorney, Jefferson, TX, for appellee.

Before Morriss, C.J., Moseley and Burgess, JJ.

## OPINION

Opinion by Justice Burgess

### I. Facts and Procedural History

Louanne Larson was convicted of capital murder in 1993, and the jury assessed a life sentence. Her conviction was affirmed on direct appeal. *Larson v. State*, 890 S.W.2d 200 (Tex.App.–Texarkana 1994, pet. ref'd). Larson originally filed a post-conviction motion for deoxyribonucleic acid (DNA) testing in 2002 under Article 64.03 of the Code of Criminal Procedure. *See* Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 2, art. 64.03(a), 2001 Tex. Gen. Laws 2, 3 (amended 2003, 2015) (current version at Tex. Code Crim. Proc. art. 64.03(a)). This Court affirmed the trial court's denial of that motion. *See Larson v. State*, No. 06–04–00056–CR, 2004 WL 2708039, at *4 (Tex.App.–Texarkana Nov. 30, 2004, pet. ref'd) (mem. op., not designated for publication).

Article 64.03 was subsequently amended, and in February 2015, Larson filed a second post-conviction motion for DNA testing under the amended version of the statute. *See* Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 3, art. 64.03(a), 2003 Tex. Gen. Laws 16, 16 (amended 2015) (current version at Tex. Code Crim. Proc. art. 64.03(a) (West Supp.2015)). The trial court denied this second motion as well. The trial court's second order included findings that "[i]dentity was not an issue" and that "DNA testing of Item (1) would

not establish a reasonable probability that Larson would not have been convicted if an exculpatory result had been obtained." Larson now appeals from the trial court's order denying her second motion for DNA testing.

The underlying case involved the murder of two individuals who were killed in an execution-style slaying at a club owned by Larson, and there is evidence that she, [Tim] Rule (who was her boyfriend), and Tim Rice were alone in the club with the two victims when they were killed. The evidence that Larson was present during the shooting is based on the testimony of her two codefendants and on evidence that the victims were killed with her 9 mm pistol, two pairs of blood-stained pants (with the blood being a type consistent with one victim) discovered during the search of her home, and the existence of minuscule blood splatters on the ceiling of her office at the club. Rice and Rule loaded the bodies into garbage cans and carried them away in the trunk of Larson's former husband's automobile. She did not contest the sufficiency of the evidence to support the verdict in her direct appeal. *Id.* at *1.[1]

Although Larson's pro se brief is not a model of clarity, she complains that "the trial court erred in denying [her] second motion for trace evidence search and forensic DNA testing." Larson further asserts her claim of actual innocence, stating that she is not guilty of the crime of which she was convicted, that her motion and affidavit filed in the trial court should be "considered and granted," and that "[t]he only way to prove there is no biological evidence within the waistband of the jeans is **by forensic trace evidence search and DNA testing.**"[2] Larson, therefore, clearly wants the jeans (referred to as "Item (1)" in the trial court's order) tested for DNA, which is the same request she made in her previous motion for DNA testing, the denial of which this Court affirmed. Additionally, Larson asks this Court to grant the relief requested in her motion to the trial court on pages 14 and 15. There, Larson requested that the State be required to "give an account of [the] location [of the evidence] through chain of custody logs, and show the evidence to the Presiding Judge."

Specifically, Larson moved the trial court to permit DNA testing on the following items, in addition to the blue jeans:

II. Sheetrock—blood spec removed and DNA forensic testing done on the specimen and compared to blood DNA samples of Cedric Baker and Charles Edward Wardlaw.

III. Trunk Lid Blood Sample (on Q-tips) to be DNA tested and blood specimen DNA compared to blood DNA specimen of Cedric Baker and Charles Edward Wardlaw's samples.[3]

IV. Blood Samples of Cedric Baker and Charles Edward Wardlaw to be DNA tested for the comparison to II. Sheetrock and III. Trunk Lid Blood Sample.

## II. Chapter 64 and the Standard of Review

Motions for post-conviction DNA testing are subject to the requirements of Article

---

1. A complete statement of the facts of Larson's murder case can be found in this Court's opinion in *Rule v. State*, 890 S.W.2d 158 (Tex.App.–Texarkana 1994, pet. ref'd).

2. Although Larson refers to an affidavit she filed in the trial court, that affidavit was not made a part of the record in this appeal.

3. Baker and Wardlaw were the victims of the crimes of which Larson and Rice were convicted.

64.03(a),[4] among others. Two of those requirements are relevant here: (1) "the evidence ... still exists and is in a condition making DNA testing possible" and (2) "the convicted person establishes by a preponderance of the evidence that ... the person would not have been convicted if exculpatory results had been obtained through DNA testing." Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 3, art. 64.03(a), 2003 Tex. Gen. Laws 16, 16 (amended 2015).

 In reviewing the trial court's ruling, we afford " 'almost total deference' to the trial court's resolution of questions of historical fact and application-of-law-to-fact issues that turn on witness credibility and demeanor, but we consider de novo all other application-of-law-to-fact questions." *Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim.App.2008) (quoting *Rivera v. State*, 89 S.W.3d 55, 59 (Tex.Crim.App.2002)). "Under this standard, we defer to the trial court's findings when reviewing appellant's contentions, the credibility of appellant's affidavit, and whether the claimed DNA evidence exists and is in a condition to be tested." *Jones v. State*, No. 07–10–00128–CR, 2011 WL 611833, at *1 (Tex.App.–Amarillo Feb. 22, 2011, no pet.) (mem.op.) (citing *Rivera*, 89 S.W.3d at 59; *Yarbrough v. State*, 258 S.W.3d 205, 208 (Tex.App.–Waco 2008, no pet.)). "A 'favorable' DNA

test result must be the sort of evidence that would affirmatively cast doubt upon the validity of the inmate's conviction; otherwise, DNA testing would simply 'muddy the waters.' " *Ex parte Gutierrez*, 337 S.W.3d 883, 892 (Tex.Crim.App.2011) (quoting *Rivera*, 89 S.W.3d at 59).

## III. Analysis

### A. The Blue Jeans

 As in her previous DNA appeal, Larson claims the trial court erred in denying DNA testing of biological specimens located inside a pair of blue jeans taken from her apartment. The State "used the jeans as a substantive link in its circumstantial evidence case," because

> although the jeans were men's jeans, the State argued that, because Rice had a thirty-six-inch waist, he could not have been wearing them, that the jeans were approximately the same size as a pair of red jeans that were admittedly Larson's, and that she may have been wearing the jeans in question that night.

*Larson*, 2004 WL 2708039, at *2. We previously framed Larson's argument—which appears to us to be unchanged from that of her previous appeal—as follows:

> the blood splatter from the shooting was found on the outside of the jeans-and she does not argue that the jeans were

---

4. The version of Article 64.03(a) in effect at the time Larson filed her motion provided:

(a) A convicting court may order forensic DNA testing under this chapter only if:

(1) the court finds that:

(A) the evidence:

(i) still exists and is in a condition making DNA testing possible; and

(ii) has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(B) identity was or is an issue in the case; and

(2) the convicted person establishes by a preponderance of the evidence that:

(A) the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

Act of Apr. 25, 2003, 78th Leg., R.S., ch. 13, § 3, art. 64.03(a), 2003 Tex. Gen. Laws 16, 16 (amended 2015). As is discussed later, Article 64.03(a) was amended in 2015, but Larson's motion was filed prior to the effective date of the current statute.

not present at the shooting. She argues that she was not there and that someone else was wearing them. She therefore asks that DNA testing be done on the inside of the jeans, claiming they were not worn by her-and that, if DNA from another person was found *inside* the jeans, then it would tend to show she was not present at the murder. She has specifically asked that her former boyfriend, Rule, who is in prison, be tested to determine whether there is a match between his DNA and that found in the jeans. The jeans are described as men's size 32–32 blue jeans.

*Id.* at *1.

We further noted that, although "there was a substantial amount of circumstantial evidence that could point to [Larson] as one of the killers . . . [a]ll of that evidence . . . could also be said to support her defensive theories." *Id.* at *2.

> For example, the pistol was hers, but there was testimony it was kept in the office. The pistol was traded by Rule to Larson's aunt for a smaller weapon, but Larson told the police where to recover it. The testimony of Rule places Larson in the office at the time of the shooting. However, in his statement, Rule said that Rice came out of the office after the shooting, told him he (Rice) had killed those two, and threatened to kill both he and Larson and threatened his family unless he helped Rice dispose of the bodies.

*Id.* (citing *Rule*, 890 S.W.2d at 165). We also noted that

> there was no evidence placing Rule as a shooter, or in the office at the time of the killing. If the test showed such, then most of the State's evidence would abruptly be considered in an entirely different light. We cannot conclude that the State's evidence in this case was overwhelming, as is quite clearly shown

by its failure to convince the first jury that heard the entirety of the evidence (including the live testimony of Rice instead of the canned version read to the second jury).

*Id.* at *3.

Despite the fact that we could not conclude the evidence of guilt was overwhelming, we nevertheless affirmed the trial court's order denying DNA testing. In doing so, we determined that, although (1) this evidence still exists and is in the custody of the State and (2) the chain of custody requirement was adequately shown, *Id.* at *2, Larson failed to show "a reasonable probability exists that exculpatory DNA tests would *prove her innocence.*" *Id.* at *3 (emphasis added). We reasoned that, even if DNA from Rule was recovered from the jeans, and no DNA from Larson was recovered,

> [w]e cannot say from this sequence of possible outcomes that the evidence would be sufficiently strong to require this Court to conclude that a positive test for Rule's DNA inside the jeans would have caused the State's case to collapse. Under the *Kutzner* formulations, and the cases following that formulation before the amendment of the statute, we cannot find that Larson met the requisite burden that would require DNA testing under these facts.

*Id.* at *3. Consequently, we held that, "[u]nder the *Kutzner* standard requiring Larson to show a reasonable probability exists that exculpatory DNA tests would prove her innocence—that does more than 'muddy the waters . . . [—]we cannot find she met her burden." *Id.*

Since the time of this Court's decision regarding Larson's initial DNA appeal, *Kutzner v. State*, 75 S.W.3d 427, 438–39 (Tex.Crim.App.2002), has been superseded

by statute. As explained by the Court of Criminal Appeals:

In *Kutzner v. State*, we considered the legislative intent of Article 64.03(a)(2)([A]) and determined that the statute requires convicted persons to "show a reasonable probability exists that exculpatory DNA tests would prove their innocence." 75 S.W.3d 427, 439 (Tex. Crim.App.2002). In response to this opinion, the Legislature amended and clarified Article 64.03. The bill analysis states:

a. The bill clarifies that the standard of proof with regard to getting a DNA test is 'preponderance of the evidence.' By taking out the 'reasonable probability' language, the intent is to clarify that the defendant does not have to meet two burdens. Despite the reasoning in *Kutzner*, the Legislature did not intend for the defendant to have to prove 'actual innocence' (a principle under habeas law) in order to meet his burden to have the test done. The defendant must prove that, had the results of the DNA test been available at trial, there is a 51% chance that the defendant would not have been convicted.

b. The bill further clarifies that the defendant does not have to meet a two-prong test of not having been prosecuted or convicted. Rather, the intent was that the person would have to prove by a preponderance of the evidence that he would not have been convicted. Accordingly, the bill strikes the 'prosecuted or' language.

*Smith v. State*, 165 S.W.3d 361, 364 (Tex. Crim.App.2005) (quoting HOUSE COMM. ON CRIM. JUR., BILL ANALYSIS, Tex. H.B. 1011, 78th Leg., R.S. (2003)). This statutory revision means that Larson need no longer establish a reasonable probability that exculpatory DNA tests would prove her innocence; instead, she must show, by a preponderance of the evidence, that she would not have been convicted if exculpatory results had been obtained through DNA testing. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2).

 Here, it was previously established that the blue jeans exist and that they have been subjected to a sufficient chain of custody, and the State is bound by that ruling under the law of the case doctrine.[5] Clearly, identity was an issue in

---

5. The trial court found in this case that the blue jeans found in Larson's apartment with blood spatter on them, have not been subjected to a chain of custody sufficient to establish that they have not been tampered with or altered with regard to testing for biological specimens inside the jeans because they have become contaminated for the purposes of DNA testing and have been handled repeatedly by multiple persons before, during, and after trial when there was no contemplation of DNA testing and further have been exposed to water damage due to flooding of the room in which it is stored.

The record does not contain any evidence which supports that finding, only allegations in the State's reply to Larson's Motion for DNA Testing. Yet, in our previous opinion, we explained that

Larson has asked specifically only for testing to determine whether Rule's DNA was on the inside of the jeans and to determine whether her own DNA was there. As pointed out by the State, it is possible that her own DNA might not be on the jeans, or that some other person's DNA might be found who handled the jeans. That is not the correct question, because her request is limited to whether Rule's or her DNA was found inside the jeans. Thus, the second requirement is adequately shown.

*Larson*, 2004 WL 2708039, at *2. Under the law of the case doctrine, our previous holding was binding on the parties in the current case.

The law of the case doctrine applies to Article 64.03 motions for DNA testing. *See State v. Swearingen*, 424 S.W.3d 32, 35–36 (Tex.Crim. App.2014). Under that doctrine, "when the

the case, as there were at least two possible shooters—Larson and Rice. We have

facts and legal issues are virtually identical, they should be controlled by an appellate court's previous resolution." *Id.* Of course, "as the rule is generally applied, the doctrine is limited to questions of law only, and does not apply to questions of fact." *Ex parte Calvin,* 689 S.W.2d 460, 462–63 (Tex.Crim. App.1985). However, what constitutes a question of law has been broadly defined. In *Swearingen,* as in this case, the defendant sought to re-litigate his previous motion for DNA testing in light of statutory amendments to Article 64.03. *Swearingen,* 424 S.W.3d at 36. The Court of Criminal Appeals noted that, "[i]n our previous decision, we held that the appellee had not shown that most of the evidence he now wants tested contained biological material." *Id.* at 37. The Court of Criminal Appeals concluded that

[i]n this case, the only effect the amendments had was to relieve the appellee's burden as to the fingernail scrapings. Because fingernail scrapings are now defined as biological material *per-se,* the appellee no longer needs to show that they contain biological material. However, the appellee still cannot prove the existence of biological material in the case of the ligature, the other half of the pantyhose, the cigarette butts, or the victim's clothing. The most recent amendments do not affect our previous analysis in those cases, and the law-of-the-case doctrine controls.

*Id.* Strictly speaking, whether an item of evidence contains biological material is a fact question, not a legal question. Yet, the quoted language from *Swearingen* suggests that even though the law of the case doctrine does not apply to fact questions, it does apply to a previous determination that a fact was established by the evidence. In other words, the legal conclusion that the evidence is sufficient is the law applicable to subsequent litigation involving the same parties and facts. *But see Alexander v. State,* 866 S.W.2d 1, 2–3 (Tex. Crim.App.1993) (holding that by virtue of the presumption of innocence in criminal cases, "[a]pplication of the law of the case doctrine is never appropriate when sufficiency of the evidence [of the defendant's guilt] is challenged after a retrial"). Accordingly, any doubts as to the chain of custody arising from changes to the evidence occurring prior to our previous opinion was resolved by that opinion and is not now challengeable.

previously concluded that the evidence of Larson's guilt could not be characterized

To the extent the trial court's finding is based on changes to the evidence occurring *after* our previous opinion, we would note that at least since 2001, the State has been required to "ensure the preservation of ... evidence that (1) was in the possession of the state during the prosecution of the case; and (2) at the time of the conviction was known to contain biological material that if subjected to scientific testing would more likely than not: (A) establish the identity of the person committing the offense: or (B) exclude a person from the group of persons who could have committed the offense." Act of Apr. 3, 2001, 77th Leg., R.S., ch. 2, § 1, art. 38.39, 2001 Tex. Gen. Laws 2, 2 (amended 2005, 2009, 2011, 2013, 2015) (current version at Tex. Code Crim. Proc. art. 38.43 (West Supp.2015)). Given this statutory mandate, it is not possible for the State to assert that since our last opinion DNA testing was not contemplated. And if, as the trial court found and the State argued, the blue jeans "have become contaminated for purposes of DNA testing and have been handled repeatedly by multiple person before, during, and after trial when there was no contemplation of DNA testing and further have been exposed to water damage due to flooding of the room in which it is stored," those events occurred at a time when the State was under the statutory mandate to preserve the evidence.

To allow the State to avoid DNA testing by asserting that the evidence which it has been under a statutory mandate to preserve was somehow contaminated through improper handling and storage would essentially allow the State to circumvent Article 64.03 in its entirety. As the Court of Criminal Appeals has held, "Absent evidence of tampering or other fraud[,] ... problems in the chain of custody do not affect the admissibility of the evidence. Instead, such problems affect the weight that the fact-finder should give the evidence, which may be brought out and argued by the parties." *Druery v. State,* 225 S.W.3d 491, 503–04 (Tex.Crim.App.2007). Consequently, as a matter of law, it has been established that the evidence in question exists and that it has been subjected to a sufficient chain of custody. Any remaining issues regarding the condition of the evidence would go only to the weight of the evidence rather than its admissibility.

as overwhelming and that the blood-spattered jeans which Larson seeks to have tested were a substantive link in the State's circumstantial evidence case. Further, the circumstantial evidence of Larson's guilt, as previously pointed out, could also be said to support her defensive theories. The exculpatory evidence Larson seeks to discover by means of DNA testing of the blue jeans is "the sort of evidence that would affirmatively cast doubt upon the validity of [her] conviction." *Gutierrez*, 337 S.W.3d at 892.

Yet, the statute in effect at the time Larson filed her motion for DNA testing stated, "A convicted person may submit to the convicting court a motion for forensic DNA testing of evidence *containing* biological material." (Emphasis added). Act of May 20, 2011, 82d Leg., R.S., ch. 366, § 1, 2011 Tex. Gen. Laws 1016, 1016 (amended 2015) (current version at TEX. CODE CRIM. PROC. art. 64.01(a–1) (West Supp.2015)). In *Swearingen*, the Court of Criminal Appeals stated, "A literal reading of the statute unequivocally mandates that all evidence to be tested must first be proven to contain biological material." *Swearingen*, 424 S.W.3d at 37. The court recognized that "a plain reading of the statute … could lead to the deprivation of DNA testing in the rare case simply because of the inability to ascertain whether or not biological material exists." *Id.* Here, unfortunately, that is the result. There is no way for Larson to positively

ascertain or *prove* that the inside of the blue jeans contains biological material.

The statute has since been amended, effective September 1, 2015, to provide, "A convicted person may submit to the convicting court a motion for forensic DNA testing of evidence that has a *reasonable likelihood* of containing biological material." TEX. CODE CRIM. PROC. ANN. art 64.01(a–1) (emphasis added). Yet, because Larson's motion for DNA testing was filed in the trial court in February 2015, prior to the effective date of the amended statute, the previous statutory language controls. Because Larson did not prove that the inside of the jeans contains biological material, we are compelled to conclude that, under the statute in effect at the time her motion was filed, she was not entitled to DNA testing of the jeans.[6]

### B. Sheetrock, Trunk Lid, and Blood Samples [7]

█ Larson further contends that she is entitled to have a piece of sheetrock taken from the ceiling of the room in which the victims were shot tested to determine if the blood present on the sheetrock matched the DNA of the victims. The trial court determined that the sheetrock has

> not been subjected to a chain of custody sufficient to establish that it has not been tampered with or altered with regard to testing for biological specimens and has become contaminated for the

---

6. To clarify, Article 64.03 was amended in 2003 to change the burden of proof from "reasonable probability" to "preponderance of the evidence." *See Smith*, 165 S.W.3d at 364. Article 64.03 was amended again in 2015 to change the requirement that a defendant affirmatively prove that biological material exists on the evidence to a requirement that the defendant merely prove "a reasonable likelihood that biological material suitable for DNA testing" exists, *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B) (West

Supp.2015); *compare with Swearingen*, 424 S.W.3d at 37. Because Larson's motion was filed in February 2015, the 2003 amendments to art. 64.03 are applicable to her motion, but the 2015 amendments are not.

7. Our previous opinion did not make any findings regarding the sheetrock, trunk lid, or blood samples. Therefore, our previous opinion does not impact the trial court's findings with respect to those items in this case.

purposes of DNA testing and has been handled repeatedly by multiple persons before, during and after trial when there was no contemplation of DNA testing and has further been exposed to water damage due to flooding of the room in which it was maintained.

Further, the trial court found that "[t]he blood specimen from the sheetrock which was previously submitted to the DPS lab in Austin Texas has not been maintained by the lab and the lab has no items available for additional DNA testing for this case." We defer to the trial court's findings. Larson is not entitled to DNA testing of the sheetrock.

■ The evidence at trial showed that the bodies of the murder victims were wrapped in plastic and placed in garbage bins. These garbage bins were placed in the trunk of Larson's ex-husband's vehicle. *Rule*, 890 S.W.2d at 165. Larson contends that she is entitled to have a blood sample taken from the trunk lid tested for DNA to determine if that blood sample matched the DNA of the victims. The trial court found that "a blood sample taken from the trunk lid of Larson's automobile was destroyed during or after testing and is not available for DNA testing according to the Department of Public Safety Crime Laboratory." We defer to the trial court's finding in this regard.

■ Lastly, Larson contends that she should be permitted to have the victims' blood samples DNA tested for the comparison to the sheetrock and the trunk lid blood sample. The trial court found that "blood specimens of the deceased victims ... have not been preserved and are not available for testing, according to the Department of Public Safety Crime Lab and therefore no comparison could be made." We defer to the trial court's finding in this regard.

## IV. Conclusion

We affirm the trial court's order.