

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-16-00120-CR

---

ERIC CARSON WYNN, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 27,805-B

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

In 2000, Eric Carson Wynn was convicted of aggravated sexual assault pursuant to his plea of guilty. *Wynn v. State*, No. 06-12-00103-CR, 2012 WL 4350440 (Tex. App.—Texarkana Sept. 24, 2012, pet. ref'd) (mem. op., not designated for publication). The "supporting evidence included Wynn's DNA recovered from the person of the victim." *Id.* After errors in the FBI-developed population database were discovered in 2015, Wynn filed a post-conviction motion for DNA testing. He requested (1) retesting and reevaluation of the DNA recovered from the victim and (2) DNA testing "of the child born to the victim in the aftermath of the assault," which he believes will prove "that he was not the child's father . . . [and] was innocent of the assault." *Id.* The trial court denied Wynn's motion, prompting this appeal.

"Motions for post-conviction DNA testing are subject to the requirements of Article 64.03(a), among others," including that the convicted person establish, "by a preponderance of the evidence[,] that . . . [he] would not have been convicted if exculpatory results had been obtained through DNA testing." *Larson v. State*, 488 S.W.3d 413, 416–17 (Tex. App.—Texarkana 2016, pet. filed) (footnote omitted)); *see* TEX. CODE CRIM. PROC. ANN. art. 64.03(a) (West Supp. 2016). In two separate appeals brought by Wynn in 2011 and 2012, we previously determined that Wynn could not meet Section 64.03's requirements. Our opinions on these matters have become the law of the case. Accordingly, we affirm the trial court's order denying post-conviction DNA testing.

## I. Factual and Procedural Background

"Prior to his conviction, Wynn never denied having committed the crime of aggravated sexual assault as he had been charged; on the contrary, he confessed to the crime." *Wynn v. State*,

No. 06-10-00226-CR, 2011 WL 5865710, at *1 (Tex. App.—Texarkana Nov. 23, 2011, pet. ref'd)

(mem. op., not designated for publication). "DNA testing, conducted in connection with the

investigation of the assault, showed results consistent with Wynn's confession." *Id.* The Texas

Department of Public Safety (DPS) Garland Crime Laboratory analyzed known samples of

Wynn's blood with DNA recovered directly from the victim, yielding the following results:

> The DNA profile recovered from the sperm fraction of the vaginal swab is consistent with the DNA profile of the suspect. Suspect Wynn cannot be excluded as the contributor of this stain. The probability of observing this DNA profile is approximately 1 in 1.069 quadrillion for Caucasians, 1 in 79.87 quadrillion for Blacks, and 1 in 997 trillion for Hispanics. Based on these probabilities, the suspect is the source of this stain.

> On June 30, 2015, the DPS issued the following statement:

> The Texas Department of Public Safety Crime Laboratory system was informed by the Federal Bureau of Investigation in May 2015 of errors in the FBI-developed population database. This database has been used by the Texas DPS Crime Laboratory system as well as many other crime laboratories across the country for calculating match statistics in criminal investigations and other types of human identification applications since 1999.

> Upon notification, the forensic DNA community immediately began corrective action. During implementation of corrective measures, minor discrepancies were discovered in additional data used exclusively by the Texas Department of Public Safety. All of the errors have been corrected and the changes have empirically demonstrated minimal impact on the calculations used to determine the significance of an association. **Further, the database corrections have no impact on the inclusion or exclusion of victims or defendants in any result.**

> If requested in writing, the Texas DPS Crime Laboratory System will recalculate and report statistics previously reported in individual cases.

In a statement dated September 10, 2015, the DPS informed the public that it noticed an issue

"specific to the combined probability of inclusion (CPI) method of calculating statistics for DNA

3

mixtures," which resulted in a protocol change on August 10, 2015, "translat[ing] to more conservative statistics."

After receiving word of these DPS statements, Wynn wrote to Bob Wicoff, the Director of the Texas DNA Mixture Review Project, presumably to determine the impact of the changes on his case. On March 17, 2016, Wicoff responded to Wynn by letter to explain that as Texas laboratories began recalculating DNA results in cases affected by the database errors, "another, unrelated issue surfaced" in cases where there were "two or more contributors to a piece of evidence." Wicoff assured Wynn that CPI was not the method used to analyze the DNA samples in his case and that the "FBI statistics you mention are not the issue."

Nevertheless, Wynn filed a motion for post-conviction DNA testing, requesting that the "lab report . . . be recalculated" and that the child's DNA be tested based on the errors referenced in the DPS statements. The request was denied.

## II.    The Law of the Case Doctrine Resolves this Appeal

In 2011, Wynn appealed the trial court's denial of his motion to retest the DNA sample obtained from the victim using the Y-STR method. *Wynn*, 2011 WL 5865710, at *1. Wynn's request for retesting was based on his belief that "the victim was sexually active with an Hispanic male at the time of the alleged assault" and because there were differences between the Y-STR methodology and the STR methodology that was used to test the sample. *Id*. In upholding the trial court's denial of Wynn's motion, we explained that Wynn was not entitled to such testing because (1) Chapter 64 requires a defendant to establish that he "would not have been convicted if exculpatory results had been obtained through DNA testing" and (2) the presence of another

4

male donor to the sample obtained from the victim "would not exculpate Wynn, but would merely add another person to the mix."  TEX. CODE CRIM. PROC. ANN. art. 64.03(a) (West Supp. 2016); *Wynn*, 2011 WL 5865710, at *4.

At the time of Wynn's plea hearing in 2000, the victim "was five months pregnant as a result of the assault and identified Wynn as the father of the child."  *Wynn*, 2011 WL 5865710, at *1.  In 2012, Wynn asked for, and was denied, DNA testing of the child and appealed the trial court's ruling to this Court.  *See Wynn*, 2012 WL 4350440, at *1.  In resolving that appeal, we held both that the child was not biological material in possession of the State within the meaning of Chapter 64 and that a determination that Wynn was not the child's father would not exculpate him of the crime of sexual assault.  *Id.* at *2; *see* TEX. CODE CRIM. PROC. ANN. art. 64.01(a) (West Supp. 2016).  Accordingly, we affirmed the trial court's denial of Wynn's post-conviction motion for DNA testing of the child.  *Wynn*, 2011 WL 5865710, at *2.

"Chapter 64 motions are also subject to the 'law of the case' doctrine."  *State v. Swearingen*, 478 S.W.3d 716, 720 (Tex. Crim. App. 2015).  "According to that doctrine, 'an appellate court's resolution of questions of law in a previous appeal are binding in subsequent appeals concerning the same issue.'"  *Id.* (quoting *State v. Swearingen*, 424 S.W.3d 32, 35–36 (Tex. Crim. App. 2014)).  "Therefore, 'when the facts and legal issues are virtually identical, they should be controlled by an appellate court's previous resolution.'"  *Id.* (quoting *Swearingen*, 424 S.W.3d at 35–36).  "Such a rule promotes 'judicial consistency and efficiency.'"  *Id.* (quoting *Swearingen*, 424 S.W.3d at 35–36).

We conclude that the errors in the FBI-developed population database and the alteration of the CPI protocol do not alter our previous opinions, which held that Wynn failed to demonstrate, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained from (1) retesting the profile recovered from the sperm fraction of the victim's vaginal swab and (2) testing the child's DNA. Applying the law of the case doctrine, we overrule the points of error raised by Wynn on appeal.

## III. Conclusion

We affirm the trial court's order denying Wynn's motion for post-conviction DNA testing.

Bailey C. Moseley
Justice

Date Submitted:     October 10, 2016
Date Decided:       October 21, 2016

Do Not Publish

6