

# NUMBER 13-25-00281-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

PAUL JOSEPH SHOEMAKER,                                      Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

---

## ON APPEAL FROM THE 404TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

This appeal arises from the trial court's denial of appellant Paul Joseph Shoemaker's post-conviction motion for DNA testing. *See* TEX. CODE CRIM. PROC. art. 64.01. Shoemaker specifically appeals the trial court's denial of testing for a cigarette lighter, asserting all of the statutory requirements were met to obtain further forensic testing. We affirm because we must defer to the trial court's finding that there was

insufficient evidence establishing a chain of custody for the lighter.

## I.  BACKGROUND

On February 19, 2004, a jury convicted Shoemaker of first-degree felony murder and sentenced him to thirty years' imprisonment. *See* TEX. PENAL CODE § 19.02(b), (c). Shoemaker appealed his conviction, but this Court affirmed. *Shoemaker v. State*, No. 13-04-149-CR, 2006 WL 2521626, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2006, pet. ref'd) (mem. op., not designated for publication). On November 8, 2024, Shoemaker filed his motion for forensic DNA testing seeking testing on five items: (1) the murder weapon's magazine, (2) a spent casing collected at the scene, (3) bullets from inside the magazine, (4) a lighter handled by the shooter, and (5) two cigarette butts.

The victim, Richard Reyes, was shot in the chest outside the Valle Vista Apartments in Harlingen. According to Shoemaker, the shooter initially approached the apartments and asked for Reyes to come outside, and, while waiting, asked for a lighter and smoked a cigarette. A trial witness, John Ramos, testified that the shooter fired once and then attempted to reload as though the "bullet jammed," but was unsuccessful and fled the scene.

Based on these facts, Shoemaker asserted in his motion that it was reasonably probable each piece of evidence had biological material, was secured related to the offense, was in the State of Texas's possession during trial, and, with the exception of the cigarette butts, was not previously DNA tested. *See* TEX. CODE CRIM. PROC. art. 64.01(a), (b)(1). He further argued that the lighter met the statutory requirements of Texas Code of Criminal Procedure Article 64.03(a) to be tested.

2

The State initially responded that the first three items were destroyed and could not be procured for testing. The State also argued that eyewitnesses directly identified Shoemaker as the murderer, that most witnesses were reluctant to testify because Shoemaker was a gang member and they feared gang retaliation, and that Shoemaker had killed Reyes in retaliation for Reyes testifying against Shoemaker's gang. The State further asserted that Shoemaker had "procedurally defaulted" on his sought relief because obtaining post-conviction DNA is merely a step to a writ of habeas corpus, which he had already sought and failed to obtain. Finally, the State argued that the Article 64.03 requirements were not met. *See id.* art. 64.03.

The trial court held a hearing on the motion on January 28, 2025. Shoemaker argued a variety of alleged exculpatory evidence supported his motion, including that: (1) the weapon magazine had an unknown fingerprint that did not match Shoemaker, (2) the shooter was left-handed and Shoemaker was not, (3) Shoemaker was excluded as a DNA contributor to the cigarette butts, and (4) Shoemaker had a valid alibi. He further argued the prior habeas corpus proceedings did not fully litigate the relevant issues and that there is no procedural bar to meeting Article 64.03. Shoemaker also highlighted that the State changed positions regarding items 1-3 being simply missing instead of being destroyed. The parties clarified with the trial court that the cigarette butts were with the Texas Department of Public Safety (DPS) and the lighter was with the Harlingen Police Department (HPD).

Marcos Vaca, a DPS forensic scientist, testified at the hearing regarding the DNA testing of the cigarette butts and indicated they were still in DPS's possession under climate-controlled conditions. He stated it was possible the butts had fingerprint DNA but

clarified touch DNA testing does not allow analysis of probabilities as such testing does not reveal when a person touched an item, who touched it last, or who touched it the most. He further testified DPS was only "accepting touch DNA cases on a case-by-case basis." According to Vaca, touch DNA is sensitive to destruction due to heat, moisture, and UV light. Vaca also testified that Shoemaker's DNA did not match any DNA on the butts. He clarified there were cases where the police know that someone has handled an item and no touch DNA is found. Vaca further testified that laboratories other than DPS have better testing protocols for touch DNA.

Christopher Contreras, an HPD officer, could only verify that HPD had possession of the lighter. He was unsure where the other items were located though claimed he never represented they were destroyed. He testified that the lighter was found in the homicide evidence room in a box labeled "unknown cases" and there was no paperwork indicating how it got there. The lighter was in an envelope with "an old carbon copy property tag" on the front dated October 5, 2002. He was unsure if a chain of custody had been maintained for the lighter. There was no indicator of when the envelope containing the lighter had been last opened because the only seal on the envelope was a piece of tape that was undated and not marked with any person's initials or name. He admitted some HPD evidence was lost in various cases due to either a ransomware attack or the HPD moving buildings.

Following this testimony, the State clarified that it was unsure whether items 1-3 were destroyed or missing, and that any representation that the items were destroyed was a mistake. Additionally, Shoemaker withdrew his request to test the cigarette butts under Article 64. Shoemaker then argued that the record indicated the shooter asked

4

someone for a lighter, that he smoked a cigarette, that the gun jammed after he shot Reyes, and that a magazine fell to the ground alongside a spent shell casing. Due to the foregoing evidence and an unknown palm print on the magazine, Shoemaker argued that the lighter was a "missing variable" and that testing it would allow him to meet his Article 64.03 burden to "show that by a preponderance he would not have been convicted had exculpatory results been obtained." Shoemaker argued as to other mitigating evidence such as different motives for Reyes's murder, the eyewitnesses ambushing him with identification in trial, and the motivation of one witness to fabricate identification in exchange for dismissal of charges against him.

The State responded there was no evidence the cigarettes were smoked by the shooter and that Shoemaker's other arguments were attempts to relitigate trial issues the jury already decided. The State argued that there were a wide number of possible contributors to the DNA on the lighter making it unlikely that any identified DNA would come from the true shooter. Further, the State asserted there was no clear chain of custody for the lighter and thus the standard for testing could not be met.

Following the hearing, Shoemaker filed a written reply to the State's response to Shoemaker's motion. Shoemaker asserted further arguments regarding the lack of procedural bar in Article 64, the lack of forensic evidence linking Shoemaker to the crime, the preserved chain of custody for the lighter, and that Shoemaker would not have been convicted if an exculpatory result had been obtained from the lighter. Shoemaker also formally withdrew his request to test the cigarette butts. The State replied reemphasizing the trial evidence and jury's determinations. The State also argued that the unlabeled tape on the envelope containing the lighter establishes there was an insufficient chain of

5

custody.

On May 13, 2025, the trial court signed an order finding that the handgun magazine, spent shell casing, and unspent ammunition could not be found and therefore the trial court lacked jurisdiction to grant relief. *See id.* art. 64.03(a)(1)(A)(i). The order also specified that while the cigarette butts existed in some form, Shoemaker had withdrawn his request for testing and thus deprived the trial court of jurisdiction. Finally, the trial court found the lighter was in HPD's possession but that identity was not an issue in the case and that there was insufficient evidence to establish: (1) a chain of custody, or (2) a reasonable likelihood the lighter contained biological material for DNA testing, and finally that Shoemaker would have been acquitted if exculpatory results were obtained from the DNA testing. *See id.* arts. 64.03(a)(1)(A)(ii), 64.03(a)(1)(B), 64.03(a)(1)(C), 64.03(a)(2)(A).

This appeal followed. *See* Tex. R. App. P. 25.2(a)(2); Tex. Code Crim. Proc. art. 64.05.

## II.     CHAIN OF CUSTODY

Though the trial court denied testing for all five items in Shoemaker's motion, Shoemaker only appeals the trial court's decision regarding the lighter. We review the denial of post-conviction DNA testing under a bifurcated standard. *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017); *Muzzy v. State*, No. 13-24-00217-CR, 2025 WL 635248, at *1 (Tex. App.—Corpus Christi-Edinburg Feb. 27, 2025, pet. ref'd) (mem. op., not designated for publication). "[W]e give almost total deference to the [trial] judge's resolution of historical fact issues supported by the record and applications-of-law-to-fact issues turning on witness credibility and demeanor." *Reed*, 541 S.W.3d at 768; *Muzzy*,

6

2025 WL 635248, at *1. We further consider "all other application-to-law-to-fact questions" de novo. *Holberg v. State*, 425 S.W.3d 282, 285 (Tex. Crim. App. 2014). We will sustain the trial court's decision if it "is correct under any theory of law applicable to the case." *Evans v. State*, 628 S.W.3d 358, 362–63 (Tex. App.—Fort Worth 2021, no pet.). Accordingly, we resolve this appeal solely on the chain of custody issue.

Shoemaker may obtain forensic DNA testing of evidence "that has a reasonable likelihood of containing biological material." TEX. CODE CRIM. PROC. art. 64.01(a-1). He must show that the item was not previously subject to DNA testing. *See id.* art. 64.01(b)(1). The parties do not dispute the lighter has not been previously tested. However, the trial court must find that the evidence "has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect." *Id.* art. 64.03(a)(1)(A)(ii). After examining the hearing evidence, the trial court held there was insufficient evidence to establish a chain of custody for the lighter. We agree.

Our sister courts that have examined the chain of custody requirement have held that the requirement is not met when there is evidence that there was "mishandling of the evidence collected by police," "the evidence was mixed and tainted," or if "there is nothing in appellant's affidavits to show the chain of custody of the evidence in question." *Evans*, 628 S.W.3d at 364; *Garcia v. State*, No. 01-05-00718-CR, 2008 WL 2466211, at *4 (Tex. App.—Houston [1st Dist.] June 19, 2008) (mem. op., not designated for publication), *aff'd*, No. PD-1039-08, 2009 WL 3042392 (Tex. Crim. App. Sep. 23, 2009) (not designated for publication). Further, the Texas Court of Criminal Appeals upheld a trial court's determination that there was an insufficient chain of custody when the record showed that

7

evidence was handled by multiple ungloved people, was not individually packaged, and was "commingled in a common repository." *Reed*, 541 S.W.3d at 769–70. The Court further determined that the cumulative weight of the testimony "casts doubt on the evidence's integrity, especially for the [touch DNA] testing [appellant] seeks." *Id.* at 770. Conversely, a chain of custody has been upheld where evidence showed that the biological evidence was received from a lockbox on a specific date and remained there until tendered for testing on another specific date. *See Brewer v. State*, No. 05-02-00136-CR, 2002 WL 31445286, at *2 (Tex. App.—Dallas Nov. 4, 2002, no pet.) (mem. op. not designated for publication).

Shoemaker asserts the chain of custody was sufficient because the lighter was stored in the same homicide evidence room where evidence for pending homicides was stored, it was found in its original envelope "in pristine condition," and there was no indication the original packaging was ever opened or resealed. Specifically, Shoemaker argues that because it is standard procedure to date and initial a package every time it is resealed, and there is no date on the sole piece of tape on the envelope, this is evidence that the envelope was never opened. Conversely, the State argues Contreras's testimony regarding the lack of date on the tape means that chain of custody is broken because it is unclear when the envelope was last opened or who opened it. Further, the State points to testimony establishing the overall issues with the integrity of HPD evidence including the movement of the evidence from one building to another, and cyberattacks on HPD's records system.

After hearing this testimony, the trial court determined there was insufficient evidence to establish a chain of custody. We are required to afford deference to the trial

court's decisions based on witness credibility, including here, Contreras's credibility as to the chain of custody. *See Reed*, 541 S.W.3d at 768; *Muzzy*, 2025 WL 635248, at *1. This testimony established that the envelope containing the lighter was found in an unmarked box unrelated to the specific case and mixed in with a variety of other evidence, mirroring the problematic evidence in *Reed*. *See* 541 S.W.3d at 769–70. While the lighter was individually packaged and there was no record evidence regarding who had handled the lighter in the interim, this does not establish a secure chain of custody as Shoemaker contends and is more akin to the mishandling of evidence by police as the trial court determined. *See id*.; *Evans*, 628 S.W.3d at 364; *Garcia*, 2008 WL 2466211, at *4.

Shoemaker claims this case is more like *Brewer* in that the lighter was placed in the envelope on a specific date and was since undisturbed. *See* 2002 WL 31445286, at *2. However, cutting against this assertion is the record evidence that the last time the envelope was opened and resealed it was undated with no person's initials indicating who last opened the envelope. While Shoemaker argues that the State misinterprets the meaning of Contreras's testimony as to this fact and that it should be interpreted to mean that the envelope hasn't been opened, we hold that the trial court could have reasonably concluded that the undated tape is indicative of an unknown person opening the envelope on an unknown date and not following procedure when resealing it, thus breaking the chain of custody. This was the trial court's interpretation of Contreras's testimony based on its finding there was insufficient evidence to establish a chain of custody, and we must defer to this interpretation. *See Reed*, 541 S.W.3d at 768; *Muzzy*, 2025 WL 635248, at *1. This is especially relevant because the envelope with the lighter was found in a box commingled with other evidence, which further "casts doubt on the evidence's integrity."

9

*See Reed*, 541 S.W.3d at 769–70. This case is like *Reed* because Shoemaker seeks touch DNA testing and the undated tape casts doubt on whether potential unknown persons handled the lighter after it was placed in the envelope. *See id.*

Finally, Shoemaker argues that allowing the State to avoid DNA testing by relying on its own improper preservation of evidence would allow the State to circumvent Article 64.03. However, Shoemaker's cited authority for this contention, *Larson v. State*, is distinguishable because the evidence at issue was under a specific statutory mandate to be preserved and was already found to have been subject to a sufficient chain of custody, which is not the case here. *See* 488 S.W.3d 413, 419 n.5 (Tex. App—Texarkana 2016, pet. ref'd). The trial court's ruling here was the first determination on whether there was a sufficient chain of custody for the lighter, rendering *Larson* inapplicable. *See id.* Likewise, Shoemaker's arguments utilizing *Druery v. State* are wholly inapplicable because the *Druery* court considered chain of custody under the Rules of Evidence and admissibility at trial, which present entirely different legal issues and standards of review than post-conviction DNA testing. *See* 225 S.W.3d 491, 503–04 (Tex. Crim. App. 2007).

Therefore, because the trial court's finding that there was an insufficient chain of custody is supported by the record, we overrule Shoemaker's sole issue on appeal.

### III. CONCLUSION

We affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of April, 2026.